PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Patrick E. Fitzmaurice
Hugh M. McDonald

*Attorneys for Petitioners Paul Pretlove, David Standish and
James Drury, in their capacities as Joint Liquidators of
of Three Arrows Fund, Ltd (in Liquidation)*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Three Arrows Fund, Ltd (In Liquidation),<br><br>Debtor in a Foreign Proceeding.[1] | Case No. 24-10210 (MG)<br><br>Chapter 15 |

**DECLARATION OF PAUL PRETLOVE IN SUPPORT OF
CHAPTER 15 PETITION FOR RECOGNITION AS FOREIGN MAIN PROCEEDING**

I, Paul Pretlove, to the best of my information and belief, state as follows:

1. My colleagues, David Standish and James Drury, and I are the duly appointed joint liquidators (the "**Liquidators**" or "**Petitioners**") of Three Arrows Fund, Ltd (In Liquidation) ("**TAFL**" or the "**Fund**"), a business company in liquidation in the British Virgin Islands (the "**BVI Proceeding**").

2. I respectfully submit this declaration in support of the official form chapter 15 petition for TAFL and the verified petition (collectively, the "**Petition**") filed contemporaneously herewith, which seeks recognition of the BVI Proceeding as a "foreign main proceeding," recognition of the Liquidators as "foreign representatives," and related relief.

---

[1] The Debtor's company registration number is 1710548. The Debtor's registered office is P.O. Box 2283, 1st Floor, Columbus Centre, Road Town, Tortola, British Virgin Islands.

3. I am a resident of the British Virgin Islands ("**BVI**") and a licensed insolvency practitioner in both the BVI and the United Kingdom with over 20 years of experience. I am a Managing Director of Interpath (BVI) Limited ("**Interpath**"), an advisory firm engaged in providing restructuring and insolvency-related services in the BVI. Prior to July 2022, Interpath operated under the name Kalo (BVI) Limited. Prior to April 2017, Kalo operated under the name AlixPartners (BVI) Limited and prior to December 2016, Kalo operated under the name Zolfo Cooper (BVI) Limited. I have been employed at the firm since February 2012.

4. David Standish, my colleague at Interpath Advisory Limited, United Kingdom and joint liquidator, is also a licensed insolvency practitioner with more than thirty years' experience. James Drury, my colleague at Interpath and joint liquidator, is also a licensed insolvency practitioner with more than fifteen years' experience.

5. I am duly authorized to make this declaration. I am over the age of 18 and, if called upon, could testify competently about the facts set forth herein and make this declaration in support of the *Verified Petition for Recognition of Foreign Main Proceeding and Additional Relief*, dated February 8, 2024, which seeks this Court's recognition of the BVI Proceeding as a "foreign main proceeding" and for additional relief, under sections 1504, 1507, 1509, 1515, 1517, 1520 and 1521 of title 11 of the United States Code (the "**Bankruptcy Code**").

6. I am fully familiar with the facts of this matter as a consequence of my day-to-day administration of the BVI Proceeding. Unless otherwise indicated, all statements contained herein are based on my personal knowledge of TAFL's operations and financial condition, my review of TAFL's relevant corporate records and documents, or my conversations with relevant company personnel.

7. I am familiar with the Model Law on Cross-Border Insolvency, adopted by the United Nations Commission on International Trade Law (UNCITRAL) and approved by a resolution of the United Nations General Assembly on 15 December 1997. I also understand that the Model Law has been substantially adopted in the United States as chapter 15 of the Bankruptcy Code. I am the liquidator and foreign representative for two funds and two further companies that are the subject of BVI liquidation proceedings, which have also been recognized as foreign main proceedings in the United States.[2]

8. I make this Declaration in my statutory capacity as an official liquidator and in such capacity, an officer of the BVI Court, for the benefit of all of TAFL's creditors and investors, whose interests I represent.

9. For the reasons set forth herein, I submit that: (a) David Standish, James Drury and I are duly appointed foreign representatives of TAFL in the BVI Proceeding and that the BVI Proceeding qualifies as a "foreign proceeding" within the meaning of sections 101(23) and (24) of the Bankruptcy Code; (b) this case was properly commenced in accordance with the requirements of Chapter 15 of the Bankruptcy Code; and (c) the BVI Proceeding satisfies all the requirements to be recognized as a "foreign main proceeding" pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

**I. General Background**

10. On May 3, 2012, TAFL was incorporated as an exempted company with limited liability under the laws of the BVI and operated pursuant to a Memorandum and Articles of Association dated May 3, 2012 (as later amended and restated on October 3, 2021).

---

[2] *Kingate Global Fund, Ltd. et al.*, Chapter 15 Case No. 19-12853 (DSJ).

3

11. On January 27, 2023, TAFL's sole voting shareholder, Three Arrows Capital Pte. Ltd. ("**TAC Pte**") executed a resolution to place the Fund into liquidation (the "**Liquidation Resolution**") pursuant to Section 159(2) of the British Virgin Islands Insolvency Act, 2003 (as amended) (the "**Act**"), and David Standish, James Drury and I were appointed joint liquidators (in such capacity, the "**JLs**"). A true and accurate copy of the January 27, 2023, member resolution is attached hereto as **Exhibit A**.

12. TAFL's registered office address is at the offices of ABM Corporate Services, Ltd. 1st Floor, Columbus Centre Road Town, Tortola VG1110 BVI.

A. **TAFL's Corporate Structure**

13. TAFL was founded by Kyle Davies and Su Zhu. It has two registered directors (whose powers cease following the appointment of the Liquidators) who are Messrs. Davies and Zhu (collectively, the "**Directors**").

14. TAC Pte is TAFL's sole voting member, holding 100% of the management shares. The other equity classes, each of which holds participating non-voting shares in TAFL, were split into six (6) preferred participating share classes, seventeen (17) participating share classes and one (1) restricted participating share class.

B. **TAFL's Pre-Liquidation Business**

15. TAFL was formed to make investments and short-term opportunities trading.

16. TAFL is the offshore feeder fund of Three Arrows Capital, Ltd ("**TACL**"). TACL is a Professional Fund within the meaning of the Securities and Investment Business Act, 2010, of the BVI. The investors in TACL are TAFL and Three Arrows Fund, LP (the "**Onshore Fund**," and together with TAFL, the "**Feeder Funds**").

17. It is my understanding that the Feeder Funds were set up to invest substantially all of their assets in TACL, which is a debtor in a case pending under chapter 15 in this Court

4

(Chapter 15 Case No. 22-10920 (MG)). It is also my understanding that this master/feeder structure was used to permit the pooling of investor assets with similar investment objectives, in an effort to achieve economies of scale and efficiencies in portfolio management, while preserving the separate identities of the investors and the underlying assets they had sought to invest in.

18. TACL was one of the largest crypto and digital asset venture capital firms in the world. The "Three Arrows" group started off trading traditional currencies in emerging markets. TACL then diversified into option, equities and crypto currency. By 2018, TACL was fully focused on trading cryptocurrency.

19. Upon information and belief, it is my understanding that more recently TACL's business model was such that it borrowed either cryptocurrency or U.S. dollars to trade on the cryptocurrency market. TACL's lenders were largely institutional lenders and a few high net-worth individuals who fall under the category of accredited investors.

**II.    Events Leading up to the TAFL's Liquidation**

20. A substantial part of the Three Arrows investment portfolio was in a cryptocurrency known as Luna (Terra/Luna) which was associated with a stablecoin, namely TerraUSD. It was widely accepted that TerraUSD was to be pegged to the U.S. Dollar and thus, considered, a stablecoin (meaning a cryptocurrency pegged to a fiat currency). On 9 May 2022, Terra/Luna crashed and its value wiped out completely. Put simply, Terra/Luna became worthless.

21. It was widely reported that this crash wiped out US$40 billion in value from the markets. The effect of the Terra/Luna crash caused the general cryptocurrency market and coin prices to fall because Bitcoin was sold to defend the peg of Terra to the US dollar, which drove

5

the price of Bitcoin down. The sentiment towards cryptocurrency became poor very rapidly, as the prices of other cryptocurrencies dipped quickly. The sell-off was akin to panic selling, as the market ditched risky assets such as cryptocurrency. This led to a contagion effect of the contraction of credit i.e. as lenders pulled back their loans.

22.     As a result of which, we understand that creditors to TACL made margin calls on loans due and whilst TACL was initially able to meet these margin calls, it was subsequently unable to meet all of them when the lenders reacted *en masse*.

23.     On June 27, 2022, Russell Crumpler and Christopher Farmer were appointed by the Eastern Caribbean Supreme Court (the Court) in the BVI (the "**BVI Court**") as the joint liquidators of the TACL (the "**TACL Liquidators**").

24.     Following the liquidation of TACL, the Fund has little purpose. Noting that the directors continue to have a fiduciary duty to the Fund and its stakeholders, its directors and sole voting shareholder resolved to place the Fund into a formal liquidation process by written resolution on January 27, 2023.

**III.    Events Following Commencement of the BVI Liquidation**

**A.    Statutory obligations**

25.     Since their appointment, the JLs attended to their statutory obligations and a written notice of their appointment was sent to the BVI Financial Services Commission and filed with the Registrar of Corporate Affairs.

26.     In accordance with Section 178 of the Act, the notice of appointment was advertised in the BVI Beacon and the Virgin Islands Official Gazette on February 2, 2023 and February 9, 2023, respectively. The notice of appointment was also advertised in the London Gazette and the Financial Times on February 3, 2023 and February 8, 2023, respectively. The

notices contained a statement pursuant to Section 179 of the Act providing the date of the first meeting of the creditors.

27. The Fund's registered agent, ABM Corporate Services Ltd, was formally notified of the Liquidators' appointment on January 27, 2023. All documents were delivered on February 2, 2023.

28. The Directors have also been notified of the Liquidators' appointment, and they were formally requested to provide their sworn statement of affairs (SoA) and to complete a questionnaire, which the Directors duly completed, signed and returned to the Liquidators.

29. The Liquidators have written to the Fund's administrator, ASCENT Funds Services (Singapore) Pte. Ltd. ("**ASCENT**") and have been provided with the January 2021 through to January 2022 monthly net asset value packs (the "**NAV Packs**"). The Liquidators have no knowledge of whether ASCENT prepared NAV Packs or struck a NAV since January 31, 2022. ASCENT provided a schedule of investors for the Fund as of January 31, 2022 (the "**Investors**").

30. On February 8, 2023, the Liquidators wrote to Investors to inform them of the Liquidators' appointment, to enquire if they have submitted any redemption requests since January 31, 2022 and to assist in understanding the terms on which they invested into the Fund.

31. Pursuant to Section 179 of the Act, a first meeting of the creditors of the Fund was held at Interpath (BVI)'s offices on February 17, 2023.

B. **The Investigation To Date**

32. The Liquidators have commenced an investigation of TAFL's financial affairs. To gain a better understanding the TAFL's business, the Liquidators have written to its legal advisors, Bedell Cristin BVI and Cole Frieman & Mallon LLP; Nine Yards Chambers LLC, who

the Liquidators understand have acted for the Fund and/or the Directors in their personal capacity; the Fund's auditor, Oakfield & Associates; its investment manager and former investment manager, ThreeAC Limited and TAC Pte.; and its banks, OCBC Bank and DBS Bank, to request the Fund's historic bank statements.

33. As noted above, the Fund's assets are purportedly comprised of investments in TACL. The Fund's investments and accounting for those investments are not as straightforward as reported. Upon information and belief, TAFL's investors made certain transfers of cash or cryptocurrencies to "Three Arrows" investment accounts maintained by U.S. parties at a time when TAFL and TACL had already exceeded the number of shares it was legally entitled to issue. It is unclear, based on the information currently available to the Liquidators, how those investments were funded and booked, or whether TAFL and/or its investors have legal or equitable claims to those investments. Therefore, it is very important that the Liquidators obtain access to the relevant documents to investigate any claims, legal or equitable, it may have against third parties.

34. The ASCENT NAV Packs note that at the time of the Liquidators' appointment, unsecured claims against TAFL were in excess of $25 million. The Liquidators have received proofs of debt for more than $10 million and additional redemption requests exceeding $5 million. The Liquidators have rejected one of the proofs of debt filed by a purported creditor, being received from the Liquidators of TACL which was not substantiated. That rejection has not been formally appealed but the claim was received for voting purposes at the first creditors' meeting and the Liquidators of TACL were permitted to observe that meeting in any event. No formal claim adjudication process has commenced, no distribution has been declared and no asset recoveries have been made to warrant the same.

8

35. Based on the schedule of Investors provided by ASCENT, TAFL had 703,547 issued and fully paid-up shares across ten (10) different classes of shares.

36. In addition, I have undertaken and/or directed the following actions:

   a. assumed all management responsibility for TAFL;
   b. retained consultants to assist with the investigation of TAFL's prior business activities; and
   c. have actively sought information from relevant parties to aid in its investigation, which is in the nascent stage.

I have taken and/or directed these actions from the BVI.

37. Additionally, stakeholders are actively participating in the BVI Proceeding. I anticipate that most disputes related to claims against and interests in TAFL will be resolved in the BVI courts.

IV. **The Chapter 15 Case and Support for Recognition**

38. Contemporaneously with the filing of this declaration, TAFL filed the Petition, commencing the above-captioned chapter 15 case. The Petition seeks recognition of the BVI Proceeding as a "foreign main proceeding," recognition of the Petitioners as "foreign representatives," and other necessary or appropriate relief in support of the BVI Proceeding.

39. I believe that the chapter 15 case will complement TAFL's primary proceeding in the BVI to ensure that TAFL's restructuring is effectively and economically implemented.

40. Recognition of the BVI Proceeding as a foreign main proceeding will impose an automatic stay on TAFL's property within the territorial jurisdiction of the United States. As discussed in more detail in the *Statement Pursuant to Federal Rules of Bankruptcy Procedure 1007(a)(4) and 7007.1, and Section 1515(c) of the Bankruptcy Code* (the "**Rule 1007 Statement**"), which is attached hereto as **Exhibit B**, TAFL has several items of property in the United States, including (a) funds in a client trust account maintained by Pillsbury Winthrop

Shaw Pittman LLP at J.P. Morgan Chase Bank in New York, (b) a claim filed against a debtor that is the subject of a chapter 11 case pending before the U.S. Bankruptcy Court for the District of Delaware and the JLs anticipate filing additional claims in a recently filed case, (c) legal and/or equitable claims to investment assets in U.S. entities acquired with TAFL's funds and (d) potential litigation claims against U.S. parties.

41.    I have been advised by counsel of the requirements for obtaining recognition of a foreign proceeding under chapter 15 of the Bankruptcy Code, and I believe that they are satisfied here. My understanding is that TAFL's property in the United States, which is listed in the Rule 1007 Statement, is sufficient to satisfy the debtor eligibility requirements set forth in section 109(a) of the Bankruptcy Code.

42.    I am aware of the definition of "foreign representative," as referred to in 11 U.S.C. § 101(24), and I believe that the Liquidators qualify as such. The Liquidators were appointed by the Liquidation Resolution to act as the JLs of TAFL consistent with the statutory provisions of the Act. Among other things, the Liquidators are charged with administering, protecting and liquidating the business and assets of TAFL and acting on behalf of TAFL including ultimately adjudicating creditor claims and making distributions from available assets on a pari passu basis in accordance with the statutory order of priority. As such, the Liquidators are the persons responsible for representing TAFL in the BVI Proceeding and in all related matters, including this matter, and are therefore "foreign representatives" of TAFL within the meaning of section 101(24) of the Bankruptcy Code.

43.    I also have been advised that a "foreign court" is defined in section 1502 of the Bankruptcy Code is "a judicial or other authority competent to control or supervise a foreign

proceeding." I respectfully submit that the BVI Court, which has oversight of the BVI Proceeding, qualifies as a foreign court for purposes of section 1502.

44. It is also my view that the BVI Proceeding qualifies as a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code. I understand that a "foreign proceeding" is defined as "a collective judicial . . .proceeding in a foreign country . . . under a law relating to insolvency or the adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." I respectfully submit that the BVI Proceeding qualifies as such, since by definition it is (a) a liquidation proceeding, which is a terminal process ending in TAFL's dissolution, (b) pursuant to and governed by the Act, (c) under the supervision of the BVI Court and (d) collective in nature because it resolves all creditor claims against and equity interests in TAFL.

45. I am also aware that section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding shall be recognized as a "foreign main proceeding" if the foreign proceeding is "pending in the country where the debtor has "the center of its main interests" ("**COMI**"). I understand that section 1516(c) of the Bankruptcy Code provides that a debtor's 'registered office" is presumed to be the debtor's COMI in the absence of evidence to the contrary. TAFL was formed under the laws of the BVI and has continuously maintained its registered office there. I believe that there is no basis for rebutting this statutory presumption that is afforded, and that, in any case, the facts clearly indicate that TAFL's COMI is the BVI. As demonstrated by the facts included herein, I further believe that TAFL is engaged in non-transient economic activity in the BVI.

46. Certain, but not all, of TAFL's books, records, contracts, operating agreements, and other critical documentation have been transferred to the Liquidators. The TACL Liquidators have all or a substantial amount of TAFL's books and records in the BVI. The Liquidators are working to have the remaining books and records transferred to our possession. In addition, I have received certain third-party funding, which (other than amounts held by U.S. counsel in a client trust account) is being held in a BVI-domiciled account controlled by the Liquidators. Future realizable value for TAFL's stakeholders will come from parties in the U.S. and other foreign jurisdictions and the Liquidators will be directing those activities primarily from the BVI, subject to the supervision of the BVI Court.

47. I have reviewed documentation issued by and to TAFL. In all such documentation, TAFL is referred to and addressed as a BVI company. Moreover, stakeholders are actively participating in the BVI Proceeding. TAFL's investments were recorded as equity investments in a BVI fund, TACL. It is likely the Liquidators will dispute how TACL accounted for their investments, which were arguably direct investments in the underlying funds. Those disputes are likely to be resolved by the BVI Court. Based upon the ongoing liquidation of TAFL for the past year, all of which focused on actions taken from the BVI, I believe that all relevant stakeholders, creditors and shareholders, regard TAFL to be a BVI company and the BVI Proceeding to be TAFL's current "nerve center."

48. As Liquidators, we have effectively displaced the prior board of directors of TAFL in that the appointment of the Liquidators means that the Board's powers cease, and TAFL is in liquidation in a proceeding governed by BVI law. All creditors of TAFL may submit their claims in the BVI Proceeding, and stakeholders have the right to access the BVI courts to appeal decisions of the Liquidators. Moreover, the liquidation of TAFL and its remaining affairs

are being conducted and wound down by the Liquidators from the BVI, subject to BVI Court oversight.

49. At the outset of the liquidation process, my colleagues in the BVI and I caused the requisite notices and filings to be filed, published and served, and arranged for the transfer of TAFL's books and records to Interpath BVI, as TAFL's new registered office.

50. In accordance with 11 U.S.C. § 1515(c), I am aware of no other pending foreign insolvency proceedings, except the BVI Proceeding, in which TAFL is the subject of the proceeding; however, as stated above, TAFL is considering filing applications for recognition in a number of additional jurisdictions and funding options for pursuing the same.

51. TAFL's main liabilities as of December 31, 2023, include (a) certain debts on its balance sheet that the Liquidators are investigating, (b) the costs incurred by the Liquidators and their professional advisors, and (c) certain ordinary course operating expenses for storage and maintenance of TAFL's information until such time as the Liquidators complete their investigation. TAFL may have other contingent liabilities that my team and I are investigating.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: February 8, 2024
      Tortola, British Virgin Islands

_____
Paul Pretlove